## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
          )
        v.           )     02: 08-cr-365
          )
JAMILL DENSON,           )
MATTHEW ROBERT BALZER,     )
KATIE ANN CHANDLER,       )
RICHARD EMANUEL COLEMAN,   )
QUINCY VANCO LEONARD,     )
BRYAN PATRICK LUCAS,      )
JASON LAMAR STEVERSON,     )
ALFRED TERRELL THOMAS, IV,   )
ROGER LARON UNDERWOOD, and  )
ROSS EDWARD WEBBER,      )
          )
        Defendants.    )

## OMNIBUS PRETRIAL MOTIONS ORDER

Presently before the Court for disposition are numerous pre-trial motions (Document Nos. 471, 472, 474, 475, 477, 478, 717-719, 742-744, 746-748, 752-756, 974, 1113-1118, 1174-1186, 1188, 1234-1239, 1296-1309) which have been filed by the remaining Defendants[1] in this large drug conspiracy case. The government, with the Court's permission, filed an Omnibus Response to the motions (Document No. 1321). The Court invited responsive briefs from Defendants, but only counsel for Defendant Bryan Lucas filed such a response (Document No. 1331). The government filed a reply to Lucas (Document No. 1339). The motions are now ripe for disposition.

---

[1]All outstanding discovery motions filed by Defendants who have pled guilty (Document Nos. 598-600, 706-710, 1055, 1056, 1166-1170, 1250-1254) are **DENIED AS MOOT**. Defendant Jamill Denson's Motion to Suppress (Document No. 1236) will be addressed by separate Order.

Factual and Procedural Background

The charges in this case stem from a multi-agency investigation of drug trafficking in the Brookline, Beltzhoover and Mount Washington neighborhoods of Pittsburgh, Pennsylvania. The investigation began in October 2007 with controlled purchases of cocaine from Defendants Leon Hudson and Bruno Desimone. The government then obtained Title III wiretap intercepts on five cellular telephones utilized by Defendants Nicholas Mihelcic, Anthony Terry, Jamill Denson, and Victor Nelson from May 2008 through September 2008. On September 17, 2008, agents intercepted phone calls which indicated that a shipment of 10-15 kilograms of cocaine was expected to arrive the next day. Agents arrested Anthony Terry, Jamill Denson and Victor Nelson on September 18, 2008, but the expected shipment of cocaine never materialized. That evening, agents executed search warrants and seized extensive evidence including over $150,000 in cash.

On October 14, 2008, the government filed a two-count indictment in this criminal action, Criminal No. 08-365, which named Anthony Terry, Jamill Denson and Victor Nelson as Defendants. On November 12, 2008, the government filed a 27-count Superseding Indictment. Count 1 of the Superseding Indictment charges 32 Defendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base, from October 2007 through September 2008, in violation of 18 U.S.C. § 846. Count 27 of the Superseding Indictment charges 18 Defendants with conspiracy to acquire and obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception and subterfuge, including through the creation and use of fictitious and forged prescriptions, and with conspiracy to distribute and possess with intent to distribute oxycontin, percocet, vicodin and xanax, from June 2007 through August 2008, in violation of 18 U.S.C. § 846. Counts 2-26 of the

2

Superseding Indictment charge a number of the individual Defendants with specific cocaine and crack cocaine offenses. Of the remaining Defendants, Underwood is charged at Count 25 and Chandler is charged at Count 26.

Legal Background

The principles of law governing an alleged drug conspiracy appear to be difficult to understand and appreciate. A review of the Third Circuit Model Jury Instructions regarding the crime of "Conspiracy" illustrates the vast scope of the liability to which even a minor or tangential member may be exposed. "Conspiracy" is a criminal offense separate and apart from the underlying cocaine, cocaine base, oxycontin, percocet, vicodin and xanax distribution offenses that were the alleged objectives of the conspiracies in this case. It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they never actually achieve their objective.

A conspiracy is a type of criminal partnership. In order to establish the crime of conspiracy to distribute and possess with intent to distribute a controlled substance, the jury in this case will be instructed that the government must prove each of the following elements beyond a reasonable doubt:

1. That two or more persons agreed to distribute and possess with the intent to distribute a controlled substance;

2. That Defendant was a party to, or member of, that agreement; and

3. That Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

3

The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy. The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does not have to prove that all the members of the conspiracy directly met, or discussed among themselves their unlawful objective, or agreed to all the details, or agreed to what the means were by which the objective would be accomplished. The government is not required to prove that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known to one another. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

The government must prove that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives. However, the government does not have to prove that a Defendant knew everything about the conspiracy or that he/she knew everyone involved in it, or that he/she was a member from the beginning. The government also does not have to prove that he/she played a major or substantial role in the conspiracy. On the other hand, evidence which shows that Defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he/she was a member of the conspiracy even if he/she approved of what was happening or did not object to it.

The acts or statements of _any_ member of a conspiracy are treated as the acts or statements of _all_ the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy. Therefore, the jury may consider as evidence against a Defendant any acts done or statements made by _any_ members of the conspiracy, during the existence of and to further the objectives of the conspiracy. The jury may consider these acts and statements even if they were done and made in a Defendant's absence and without his/her knowledge.

There are different statutory maximum penalties for offenses involving different quantities of cocaine: (20 years if the quantity is less than 500 grams; 40 years if the quantity is more than 500 grams but less than 5 kilograms; and life imprisonment if the quantity is more than 5 kilograms). Therefore, the government must prove the amount of cocaine involved in the alleged conspiracy beyond a reasonable doubt. However, it is the amount of cocaine involved in the _entire_ conspiracy charged – not the amount attributable directly to any individual Defendant – that must be so proven. _United States v. Phillips_, 349 F.3d 138, 143 (3d Cir. 2003). Once the jury makes a finding as to the drug quantity attributable to the conspiracy as a whole, the sentencing judge determines, by a preponderance of the evidence, the drug quantity attributable individually to each convicted Defendant. _Id._

Legal Analysis

With that background, the Court turns now to the pending motions. The Court has elected to follow the "grouping" methodology used by the government in its Omnibus Response

as the most efficient and easiest to follow, for the convenience of all concerned. However, the Court will address the motions in a different sequence than that employed by the government.[2]


    1.    <u>Motions for Joinder (# 1115, 1306, 1309)</u>

Defendants Thomas, Webber and Leonard have filed motions to join in pretrial motions filed by other Defendants.[3] On January 30, 2009, the Court issued an Order which set forth the showing that must be made in a "separate statement of joinder" before such a motion would be granted. As the government has pointed out, Thomas and Webber failed to comply with this Order. Accordingly, their motions for joinder (#1115 and #1306) are **DENIED**.

The government does not oppose Leonard's motion for joinder, as he has filed an appropriate statement of joinder. Nevertheless, the Court will deny it. On December 12, 2008, counsel for Leonard signed an acknowledgment that pretrial motions were due within ten days of arraignment unless the Court extended the time "upon written application." Document No. 373. Although virtually all of the other Defendants filed appropriate motions to extend time, such that the Speedy Trial clock has been stayed as to all Defendants, counsel for Leonard has failed, neglected and/or refused to filed any such motion on Leonard's behalf. Moreover, counsel for Leonard has been rather dismissive of the repeated efforts by the Court's staff to have him comply with his obligation to either file pretrial motions or request extensions as other Defendants did.

---

[2]There are various minor errors in the government's methodology that the Court has disregarded. For example, the motion at Document 492 has already been granted, and the motions at Document Nos. 1234 and 1236 are not identical.

[3]Subsequently, Webber filed a motion to join in co-Defendants' reply briefs (Document No. 1335), which the Court granted.

The ten-day time period for Leonard to file pretrial motions has long since passed and no timely "written application" for extension has been filed on his behalf. Accordingly, the "Statement of Joinder" (Document No. 1309) is untimely and is **DENIED**.[4]

2.     Motions to Suppress Wiretap Evidence (## 718, 747, 756, 1175, 1296)

The investigation in this case culminated in Title III wiretap intercepts on five (5) cellular telephones spanning the time frame of May 2008 to September 18, 2008. The five (5) cellular telephones were utilized by Nicholas Mihelcic, Anthony Terry, Jamill Denson, and Victor Nelson. Defendants seek to suppress the evidence obtained by the government through use of these wiretap intercepts and all of the direct and indirect fruits thereof.

The initial wiretap was authorized by Judge Donetta Ambrose by Order dated May 19, 2008, based on an Application from Assistant United States Attorney Troy Rivetti and a 42-page Affidavit from FBI Special Agent Todd Prewitt. Judge Ambrose issued four additional Orders to authorize extensions of the wiretaps, based on followup Applications/Affidavits. The Applications, Affidavits and Court Orders have been provided to Defendants.

Defendants contend that the wiretaps were obtained in violation of 18 U.S.C. § 2518. In particular, Defendants argue that the Affidavits failed to satisfy the "necessity" requirement because they did not establish a sufficient factual predicate as to why other traditional, less-intrusive law enforcement techniques were not sufficient. Defendants point out that such traditional techniques as controlled purchases of drugs by confidential informants and

_____

[4]The Court notes that its rulings on the motions that counsel sought to join will likely, as a practical matter, have the same impact on Defendants Thomas, Webber and Leonard as all other remaining Defendants.

surveillance had proven effective in this very investigation. Defendants further contend that the Applications rely heavily on the affiant's past experience and contain only vague and conclusory allegations as to the events of this case. The government contends that its Applications and the underlying Affidavits properly complied with the requirements of the wiretap statute and circuit precedent in *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997).

As an initial matter, the Court concludes that it need not conduct an evidentiary hearing on the motions to suppress wiretap evidence. The motions challenge the sufficiency of the information contained within the four corners of the Applications and Affidavits and have been thoroughly briefed. Moreover, neither any Defendant nor the government requested an evidentiary hearing on these motions.

The Court turns now to the substance of the parties' respective arguments. The federal wiretap law, 18 U.S.C. § 2518(1)(c), requires that the affidavit in support of a wiretap application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The Court must then determine, on the basis of the application, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § (3)(c). *Williams* outlines a practical and commonsense review, in which the court may consider affirmations founded in part on the experiences of trained agents. 124 F.3d at 418.

Each of Judge Ambrose's Orders contained the requisite finding regarding the limitations on use of alternative investigative techniques. Upon review of Special Agent Prewitt's Affidavits, the Court concludes that they are not limited to vague generalizations, as Defendants

8

contend.  To the contrary, they contain specific averments regarding the effectiveness and limitations of traditional techniques during this investigation.  For example, the Affidavit in support of the initial Application describes Leon Hudson's reluctance to regard Confidential Source 1 ("CS1") as a valid narcotics purchaser ( § 15); that CS1 was not privy to all of the confederates and co-conspirators involved (§ 20); that Nicholas Mihelcic had ceased his use of a prepaid cell phone on which a pen register had been obtained (§ 62); and that various targets of the investigation were sensitive to surveillance (§§ 68, 71-73, 75).  Moreover, pages 30-40 of the Affidavit are devoted to an "Assessment of Requisite Necessity," in which Special Agent Prewitt discusses, in reasonable detail, the pros and cons of alternative investigative techniques, including telephone toll/pen register, physical surveillance, a GPS device placed on Leon Hudson's car, grand jury subpoenas, the limitations on the access and knowledge of the two confidential informants who were being used, undercover agents, attempts to interview coconspirators, searches of trash, and the use of search warrants.  Each of the Affidavits submitted in support of requests for extensions of time of the wiretaps contained a similarly comprehensive discussion of alternative investigative techniques.  In sum, the Court has no difficulty in concluding that the wiretap Applications/Affidavits and Court Orders complied with the statutory requirements.  Defendants' motions to suppress the wiretap evidence (Document Nos. 718, 747, 756, 1175 and 1296) are **DENIED**.

3.    <u>General Discovery Motions</u>  (#471, 472, 474, 478, 748, 753, 754, 1113, 1114, 1177-1183, 1185, 1186, 1188, 1235, 1237, 1239, 1297-1300, 1303, 1304, 1308)[5]

Discovery in a criminal case is far different from that in a civil case.  The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure.  Outside of Rule 16, the Jencks Act, and *Brady* and its progeny, however, a defendant has no general constitutional right to pretrial discovery.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Those rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation.  *United States v. Fiorvanti,* 412 F.2d 407, 411 (3d Cir.), *cert. denied,* 396 U.S. 837 (1969).  The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution."  *United States v. Ramos,* 27 F.3d 65, 68 (3d Cir. 1994).  Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine.  *Id.*  The Court appreciates, and in some circumstances shares, Defendants' frustration with these discovery limitations.

At the outset, the Court notes that the government has repeatedly acknowledged its obligations under *Brady* and its progeny, *Giglio*, Federal Rules of Criminal Procedure 12 and 16, and the Jencks Act.  The government has also made the following representations:  (1) that it is willing to cooperate with any reasonable request by Defendants; (2) that it is unaware of any exculpatory *Brady* material pertaining to Defendants; (3) that it will

---

[5]Many of these motions seek information addressed in multiple categories below.

voluntarily turn over Jencks Act materials in its possession at least 14 days prior to trial; (4) that it will provide a written summary of any expert testimony at least 14 days prior to trial; (5) that it will turn over any impeachment materials at least 14 days prior to trial so that defense counsel can effectively cross-examine government witnesses; (6) that it will review the personnel file and/or prosecutory file and/or informant file of each trial witness, and provide any *Brady* impeachment material contained therein at least 14 days prior to trial; (7) that it will preserve the rough notes taken by agents; (8) that it will not provide Jencks Act materials to Defendants in front of the jury; (9) that it will provide a list to defense counsel of the audio and text files which it intends to use in its case-in-chief, along with a transcript, at least one month prior to trial; (10) that at least 14 days prior to trial it will inform Defendants of the general nature of any specific bad act evidence it will seek to introduce at trial pursuant to Fed. R. Crim. P. 404(b); and (11) that it has already complied with Fed. R. Crim. P. 12(b)(4) regarding disclosure of evidence.  The Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind."  *Kyles v. Whitley,* 514 U.S. 419, 439 (1995).

The government also represents that it has already disclosed substantial amounts of evidence in this case to Defendants, including written and recorded statements of Defendants, copies of all of the wiretap intercepts, copies of the Applications, Affidavits and Court Orders pertaining to the wiretap intercepts, copies of the applications and affidavits pertaining to the search warrants, copies of lab reports, surveillance photos and videos, a list of the calls and/or text messages that pertain to each Defendant (upon request of counsel).  Similarly, the government

notes that its physical and documentary evidence has been available for review since the time of arraignment.

The government has made a request for reciprocal discovery subject to disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1). *See* Omnibus Response at 69. **The Court ORDERS Defendants to provide the government with the requested reciprocal discovery at least fourteen (14) days prior to trial.**

The Court turns now to the various categories of information sought by one or more of the remaining Defendants.

a.      Impeachment Evidence (#472, 748, 754, 1113, 1177, 1183, 1186, 1239, 1303, 1308)

Defendants seek early disclosure of impeachment material pertaining to the government's anticipated trial witnesses and/or non-witness declarants whose statements are to be offered into evidence. The government objects to any expansion of its discovery obligations. As the government correctly notes, to require disclosure at this time of the requested information is tantamount to having the government identify its witnesses. The government is not obliged to provide a witness list in a non-capital case except in conformity with the Jencks Act, 18 U.S.C. § 3500, which requires the government to provide the defense with statements of witnesses that the government intends to call <u>at trial</u>. The government has accepted its obligations to provide impeachment evidence under the Jencks Act, *Brady*, *Giglio*, and Fed. R. Crim. P. 12 and 16. Indeed, the government avers that evidence which would tend to impeach the testimony and/or the credibility of a witness must be  turned over so that defense counsel is able to effectively cross-

examine that witness. Moreover, the government recognizes that strict compliance with the Jencks and *Brady* time limits could result in delay and has represented that impeachment materials relating to its trial witnesses will be provided at least 14 days prior to trial.

The government has represented that it will review the personnel file, prosecution file and informant file for impeachment material. The government is reminded of the mandate from our appellate court that "prosecutors have an obligation to make a thorough inquiry of all enforcement agencies that ha[ve] a potential connection with the[ir] witnesses." *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006) (*citing United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)). *See also United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008). Accordingly, the motions for disclosure of impeachment evidence are **DENIED WITHOUT PREJUDICE**.

b.      Disclosure of Jencks Act Materials (#1182, 1300)

There are two separate procedural issues with respect to delivery of Jencks Act materials. First, as discussed above, Defendants seek early disclosure of such materials. For the reasons set forth above, that request is **DENIED**. Second, Defendants seek to prevent the government from providing Jencks Act materials to defense counsel in the presence of the jury. The government does not oppose this request and it is hereby **GRANTED**.

c.      Statements by Alleged Co-Conspirators  (# 1118, 1184, 1305)

Defendants seek the disclosure of statements made by alleged co-conspirators. The government's position is that statements of third parties, whether alleged co-conspirators,

13

prospective government witnesses, or individuals whose statements can be attributed to a defendant for evidentiary purposes, are not automatically subject to pretrial disclosure under Federal Rule of Criminal 16(1)(1)(A) as "statements of defendant." As discussed, the government agrees that statements made by co-conspirators who will testify at trial are governed by the Jencks Act and will be provided at least 14 days prior to trial. As to non-testifying co-conspirators, the government is not required to disclose the statements of non-testifying co-conspirators unless those statements qualify as *Brady, Giglio*, or Jencks material. *See United States v. Williams-Davis,* 90 F.3d 490 (D.C. Cir. 1996); *United States v. Orr*, 825 F.2d 1537 (11th Cir. 1987). The government correctly points out that it is not required to deliver its entire investigatory file to defense counsel. Accordingly, the Defendant's request for statements of non-testifying co-conspirators is **DENIED**.

Defendants seek a pretrial hearing, *see United States v. James*, 590 F.2d 575 (5th Cir. 1979), to determine whether statements of alleged co-conspirators will be admissible at trial. Citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987), and its progeny, Defendants argue that the Court must make a threshold determination that sufficient evidence exists to establish the existence of a conspiracy prior to the admission of statements from alleged co-conspirators. The government contends that such a hearing would be protracted, duplicative of the trial on the merits, is unnecessary, and is a backdoor attempt to obtain premature disclosure of its witnesses. The government argues that the admissibility of co-conspirator statements be decided at trial.

The Court agrees with the government that a pretrial hearing is not warranted under the facts and circumstances of this case. There is substantial evidence of the existence of a drug conspiracy, as reflected by the guilty pleas of a significant majority of the Defendants charged in

this case. Moreover, in *Government of Virgin Islands v. Brathwaite*, 782 F.2d 399, 403 & n.1 (3d Cir. 1986), the Court explained that "the prosecution must lay a foundation for the admission of co-conspirator testimony by establishing the existence of a conspiracy that included the defendant or defendants," but noted that there is a distinction between the crime of conspiracy and the "coconspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E)." In *United States v. Giampa*, 904 F. Supp. 235, 286 (D.N.J. 1995), the Court explained: "a practical evidentiary rule has developed whereby a co-conspirator's statement is conditionally admitted into evidence, subject to the Government's obligation to prove the conspiracy's existence and each conspirator's participation therein before the close of the Government's case." "In the event the Government fails sufficiently to connect the defendant to the conspiracy, the "connection up" rule of admitting co-conspirator statements can lead to a mistrial." *Id.* This procedure appears to be eminently practical in this case, and it will be the government's burden to "connect up" each Defendant at trial. Accordingly, the motions for a pretrial hearing regarding the admissibility of co-conspirator statements are **DENIED**.

> d.      Exculpatory Material (#1113, 1239)

        Defendants request all material and information that may be favorable to them on the issues of guilt and/or punishment. Defendants correctly point out that this information must be viewed cumulatively. Defendants also request the production of "negative inculpatory" statements - those which do not implicate the defendant. *Brady* requires the production of material information which is <u>favorable</u> to the accused, not information which is merely not inculpatory. Defendants seem to be arguing that any statement from a law enforcement officer

that does not incriminate them is necessarily exculpatory. The Court finds that this proposition is neither supported by law nor logic. If the government were required to turn over any statement of a witness that did not fully incriminate a particular defendant, it would be required to report statements of virtually any witness it did not intend to call at trial. This clearly does not reflect the law in this circuit. *Jones v. Jago*, 575 F.2d 1164 (6th Cir. 1978), is distinguishable based on its facts in that the court found the negative inculpatory evidence in that case to be a "potentially powerful exculpation." The Court reiterates its interpretation of relevant case law as encouraging the early disclosure of all exculpatory evidence, including strictly impeachment evidence.

As noted *supra*, the government has represented that it is not aware of any exculpatory or *Brady* material pertaining to any Defendant. Accordingly, these requests are **DENIED WITHOUT PREJUDICE**.


e.      Law Enforcement Notes

Defendants have sought preservation of the "rough notes" taken by law enforcement agents. The government acknowledges its obligation to preserve such rough notes. Some Defendants have also sought disclosure of the rough notes. The government objects to disclosure and represents that the notes do not contain *Brady* or Jencks material.

Independently of the government's consent, the Court of Appeals for the Third Circuit requires that the government retain rough notes and writings. In *United States v. Ramos*, 27 F.3d 65, 68-69 (3d Cir. 1994), the Court reaffirmed its prior directives that the government preserve all notes of interviews with witnesses in criminal cases and rough drafts of investigative reports. *Id*. (*citing United States v. Vella*, 562 F.2d 275, 276 (3d Cir.1977); *United States v.*

*Ammar,* 714 F.2d 238, 258-59 (3d Cir.), *cert. denied,* 464 U.S. 939 (1983)).  Therefore, all law enforcement officers in this case are hereby **ORDERED** to retain their rough notes and any other evidence relating to interviews of alleged co-conspirators, confidential informants, and/or cooperating witnesses.

The rough notes of law enforcement agents generally are not discoverable unless those notes, pursuant to Fed.R.Crim.P. 16(a)(1)(A), constitute the substance of oral statements of a defendant which the government intends to offer into evidence at trial, which statement was given in response to interrogation by a person then known by the defendant to be a government agent.  *See United States v. Fischbach and Moore, Inc.*, 576 F. Supp. 1384, 1390 (W.D. Pa. 1983).

In accordance with the foregoing, the motions are **GRANTED IN PART** as to the preservation of notes and **DENIED IN PART WITHOUT PREJUDICE** as to disclosure of such notes to Defendants.


f.      Identification of Wiretap Calls  (# 471, 1178, 1297)

Certain Defendants have requested identification of all of the specific phone calls that the government will use at trial.  Defendants recognize that the government has previously identified certain recordings that pertain to each Defendant.  However, Defendants note that the government has well over 1000 recordings and they believe that additional recordings may be offered into evidence against them.  Defense counsel seek to be prepared to dispute such evidence, including whether or not their client(s) were participants in such telephone calls.

The government states that the list requested by Defendants would ordinarily be disclosed in its exhibit list.  However, in recognition of the volume of intercepted telephone calls,

the government has represented that it will provide a list to defense counsel of the audio and text files that it intends to use in its case-in-chief (along with a transcript) at least one month prior to trial. Accordingly, Defendants motions are **GRANTED AS UNOPPOSED**, in accordance with the government's representation regarding disclosure.

     g.     Uncharged Misconduct Evidence (#475, 477, 719, 742, 752, 1116, 1174, 1238, 1302)

Defendants have requested the disclosure of evidence of other crimes, wrongs or acts that the government intends to introduce at trial, pursuant to Fed. R. Evid. 404(b). The government has stated that it has not yet identified the specific "bad act" evidence it will seek to introduce at trial, and notes that it has already provided Defendants with copies of their criminal records. In addition, the government has represented that it is aware of its obligation and will provide such evidence at least fourteen (14) days prior to trial. Accordingly, Defendants motions are **GRANTED AS UNOPPOSED**, in accordance with the government's representation.[6]

To the extent that Defendants seek to exclude Rule 404(b) evidence, those motions are premature and must await the further development of the record at trial. Accordingly, such motions are **DENIED WITHOUT PREJUDICE**. A pretrial hearing is not warranted on this issue.

     h.     Evidence Arguably Subject to Suppression (# 746, 755)

---

[6]Defendant Lucas' motion for notice of evidence pursuant to Fed. R. Evid. 405, 406, 407 and 408 (Document No. 477) is not supported by legal authority and is beyond the scope of Fed. R. Crim. P. 16, and therefore is **DENIED**.

Defendants seek disclosure of any evidence that the government intends to introduce at trial which may be subject to suppression. The government represents that it has complied with its obligations under Fed. R. Crim. P. 12(b)(4) and has already disclosed all such evidence to Defendants. Indeed, various Defendants have filed motions to suppress evidence. The Court will accept the government's representation. Accordingly, the motions are **DENIED AS MOOT**.

i.      Bill of Particulars (#717, 743, 974, 1117, 1176, 1301)

Defendants seek a "bill of particulars" as to the government's case, including, inter alia, dates, places, specific acts, specific statements, amounts of controlled substances, and the identities of unindicted co-conspirators. Federal Rule of Criminal Procedure 7(f) provides as follows:

> The Court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

A district court has broad discretion in granting or denying a criminal defendant's motion for a bill of particulars. *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989); Fed. R. Crim. P. 7(f). Among the purposes of a bill of particulars is to inform the defendant of the nature of the charges brought against him or her so that the defendant is able to adequately prepare a defense. *United States v. Addonizio,* 451 F.2d 49, 63 (3d Cir.), *cert. denied*, 40 U.S.

936 (1972).  The Court of Appeals for the Third Circuit has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial."  *Rosa*, 891 F.2d at 1066.  However, a defendant is not entitled to general discovery of the government's case, evidence or witnesses.  *United States v. Armocida,* 515 F.2d 49, 52 (3d Cir.), *cert. denied,* 423 U.S. 858 (1975).

A bill of particulars should reveal "only the minimum amount of information necessary to permit the defendant to conduct his own investigation."  *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).  In ruling on a request for a bill of particulars, the Court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment.  *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir.), *cert. denied,* 490 U.S. 914 (1972).

In exercising its discretion in this case, the Court concludes that a bill of particulars is not warranted.  The government has provided substantial pretrial disclosures, the Superseding Indictment adequately apprises Defendants of the pending charges, and the alleged drug conspiracies are straight-forward and of relatively short durations.  Although there are numerous alleged co-conspirators, it is not incumbent upon the government to prove the role(s) played by each Defendant.  *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980) (citations omitted).  Accordingly, the motions for a bill of particulars are **DENIED**.

j.     Miscellaneous Discovery

Defendants seek numerous categories of discovery, including information about the investigation, statements, documents and objects to be used as evidence against each individual Defendant, expert reports, and scientific evidence.  The government objects to any efforts to expand its discovery and/or disclosure duties.  The government acknowledges its responsibilities under the Jencks Act, *Brady*, *Giglio*, and Rules 12 and 16 of the Federal Rules of Criminal Procedure and represents that it has "fully complied" with those obligations.  Accordingly, to the extent not directly addressed above, Defendants' discovery motions will be **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.  The Court notes that Defendants will also have the opportunity to file appropriately targeted  motions in limine.

k.     Leave to File Additional Motions (#1179, 1307)

Defense counsel seek leave to file additional discovery motions in response to evidence newly-produced by the government.  As the government's production and disclosures are ongoing, Defendants are entitled to challenge the newly produced information.  Defendants will not be permitted to raise tardy challenges to information that was disclosed by the government prior to the pretrial motions deadline.  In accordance with the foregoing, the motions for leave to challenge newly provided information are **GRANTED**.

So **ORDERED** this 23rd day of August, 2010.

BY THE COURT:


s/Terrence F. McVerry
United States District Court Judge

cc:     All counsel of record